IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **TIMOTHY THROGMORTON, M.D.,** **Administrator of the Estate of James Allen Throgmorton II, and BRITTANY OSCHMANN**<br><br>**Plaintiffs,**<br><br>v.<br><br>**KENNETH PAPAY, MAX PAPAY, LLC d/b/a Max's Water Service, MAX PAPAY and CECELIA PAPAY,**<br><br>**Defendants.** | **Case No. 2:22-cv-02301-JAR-RES** |

## MEMORANDUM AND ORDER

Plaintiffs have filed an Application for Approval of Partial Wrongful Death and Survival Settlement (Doc. 32). As the Kansas Wrongful Death Act requires, the court conducted a settlement hearing on August 23, 2023. Plaintiffs appeared via telephone and by their attorneys, Bill T. Walker (in person) and James E. Parrot (in person). Defendants Kenneth Papay, Max Papay and Cecelia Papay appeared by their attorney, John Graham (in person), and Defendant Max Papay, LLC appeared by its attorney, Andrew Holder (in person). No other person appeared.

**I.     Findings of Fact**

The Court, after reviewing the parties' submissions and information presented at the hearing and after due consideration, finds as follows:

1.     This action was brought by Timothy Throgmorton the duly appointed administrator of the estate of James Throgmorton, and Brittany Oshmann, the daughter and sole surviving heir-at-law of James Throgmorton. *See* Second Amended Complaint.

2. In this action, Plaintiffs seek damages for personal injuries – survival and wrongful death sustained by decedent James Throgmorton on August 14, 2020 as a result of a motor vehicle crash in which the car James Throgmorton was operating was struck in the rear by a pick-up operated by Kenneth Papay. *See* Second Amended Complaint.

3. Prior to filing this lawsuit, Hartford Underwriters Insurance Company, the insurer covering the pick-up operated by Kenneth Papay, offered its liability policy limits of $100,000.00. *See* Affidavit of Bill T. Walker at p.2.

4. Plaintiffs, through counsel, investigated the facts and circumstances of the occurrence, decedent's death, and the potential elements of damages set out in K.S.A. § 60-1904 (wrongful death) and K.S.A. § 60-1801 (survival). *See* Affidavit of Bill T. Walker at p.1-2.

5. Prior to filing this lawsuit, Plaintiffs' counsel learned from the police report of the crash that Kenneth Papay was "driving for employer." Statements from witnesses at the scene of the crash indicated Kenneth Papay's employer may have been Max's Water Service. Investigation by Plaintiffs' counsel showed Max Papay, LLC did business as Max's Water Service and was operated by its owners, Max and Cecelia Papay. The police report stated the pick-up was owned by Max Papay. *See* Affidavit of Bill T. Walker at p.1-2.

6. By the undersigned counsel, Plaintiffs filed this suit alleging Kenneth Papay negligently operated the pick-up and did so in the course and scope of employment with Max Papay, LLC and/or Max and Cecelia Papay. *See* Second Amended Complaint.

7. Defendants Max Papay, LLC and Max and Cecelia Papay denied any liability to plaintiffs. *See* Answer.

8. Rule 26 disclosures and written discovery revealed that it would be difficult to prevail on the claim against Max Papay, LLC and Max and Cecelia Papay. Documents and a

sworn statement by Kenneth Papay indicated he was not driving in the course of employment or agency at the time of the crash and the pick-up was not a listed or covered vehicle under the liability policy issued by EMC Property & Casualty Insurance to Max Papay, LLC. The EMC policy has liability limits of $1 million per occurrence. *See* Affidavit of Bill T. Walker at p.2-3.

9. After Plaintiffs requested depositions of the individual Defendants, the parties negotiated a settlement on behalf of persons entitled to sue under Kan. Stat. Ann. § 60-1902. *See* Affidavit of Bill T. Walker at p.3.

10. In addition to the $100,000.00 offered pre-suit by Hartford, EMC made a final offer of $575,000.00 to settle on a compromise basis the claims against Max Papay, LLC and Max and Cecelia Papay. Attorneys Walker and Parrot investigated the law and facts pertinent to this case thoroughly and advised Plaintiffs that they should settle their claim against Defendant Kenneth Papay and his insurer Hartford for the liability policy limits of $100,000.00 and settle their claim against Max Papay, LLC and Max and Cecelia Papay on a compromise basis for $575,000.00. *See* Affidavit of Bill T. Walker at p.3.

11. The settlement provides Defendants in this action a full and complete release from liability and settle all claims for injuries and death of decedent under the terms of the release documents presented to the Court at the hearing, except for the underinsured motorist claim (UIM) against Artisan and Truckers Casualty Company, a part of Progressive. *See* Affidavit of Bill T. Walker at p.3.

12. The settlement is conditioned upon the court approving the apportionment of it to all persons entitled to receive a distribution under the Kansas wrongful death statute. *See* Affidavit of Bill T. Walker at p.3.

13.	The two Plaintiffs are Dr. Timothy Throgmorton, one of the surviving brothers of decedent and personal representative of his Illinois estate, and Brittany Oschmann, decedent's sole surviving daughter and sole heir at law, Kan. Stat. Ann. §59-506, as decedent had no spouse. *See* Affidavits of Timothy Throgmorton at p.1 and Brittany Oschmann at 1.

14.	Counsel have provided Dr. Throgmorton and Ms. Oschmann with notice of the settlement, as required in Kan. Stat. Ann. § 60-1905. Counsel provided notice of the hearing set by the Court and invited Dr. Throgmorton and Ms. Oschmann to attend and participate in the hearing. *See* Affidavit of Bill T. Walker at p.3.

15.	Under Kan. Stat. Ann. § 60-1902, Plaintiff Oschmann maintains the wrongful death claim on behalf of herself as the sole heir-at-law of decedent. Under Kan. Stat. Ann. § 60-1801, Dr. Throgmorton, as personal representative of decedent's Illinois estate, brings the survival action on behalf of the estate. *See* Second Amended Complaint.

16.	Prior to filing suit, Plaintiffs employed Bill T. Walker and James E. Parrot as counsel and representatives to prosecute this case. Plaintiffs' attorneys entered into a written agreement with Plaintiffs. This agreement entitled counsel to attorneys' fees in a specified proportion of one-third of the gross recovery as well as expenses. *See* Affidavits of Timothy Throgmorton at p.1-2 and Brittany Oschmann at 1.

17. Counsel have agreed with Dr. Throgmorton to accept $175,000.00 and Plaintiffs will receive $500,000.00 out of the proceeds of the $675,000.00 recovery in this case against Kenneth Papay, Max Papay, LLC and Max and Cecelia Papay. The $50,000.00 balance of the one-third attorneys' fee and the litigation costs to which Counsel are entitled under the representation agreement, will be deducted from the recovery, if any, from the underinsured motorist (UIM) claim remaining to be litigated under Illinois law and the policy issued by Artisan and Truckers

4

Casualty Company, a part of Progressive, to Giant City Transport, for whom the decedent was driving at the time of the crash. Counsel will also be entitled to the contractual one-third contingent fee, plus any litigation costs, from the recovery, if any, on the UIM claim. *See* Affidavits of Bill T. Walker at p.4 and Timothy Throgmorton at p.2-3.

18. Dr. Throgmorton and Ms. Oschmann testified by affidavit they believe the proposed settlement with Defendants in this action is fair and reasonable considering all the facts and circumstances, and that the Court's approval will serve the estate's best interests. *See* Affidavits of Timothy Throgmorton at p.3 3 and Brittany Oschmann at 3.

19. Dr. Throgmorton and Ms. Oschmann testified by affidavit they understand the settlement, if approved, would constitute full satisfaction of all claims against Defendants in this action. They requested that the Court approve the agreed upon attorneys' fee and apportion the recovery, as required by Kan. Stat. Ann. § 60-1905. *See* Affidavits of Timothy Throgmorton at p.3 3 and Brittany Oschmann at 3.

20. Plaintiffs have a pending arbitration claim under Illinois law and the UIM policy issued by Artisan. *See* Affidavit of Bill T. Walker at p.4. Dr. Throgmorton and Ms. Oschmann testified they understand the UIM claim may or may not result in the recovery of additional funds. *See* Affidavits of Timothy Throgmorton at p.3 and Brittany Oschmann at 3.

21. Dr. Throgmorton asks the Court to approve Plaintiffs' attorney's fees and apportion the settlement proceeds to James Throgmorton's heir after deducting for reasonable attorney's fees. Specifically, Plaintiffs asked the court to apportion the gross settlement amount as follows:

(1) $175,000.00 of the gross recovery to Plaintiffs' attorneys' fees; and

5

(2) $500,000.00 to James Throgmorton's heirs, to be distributed by the Illinois probate court where decedent's estate is pending. *See* Affidavit of Timothy Throgmorton at p.3.

**II.     Legal Standard**

Sitting in diversity, this Court "appl[ies] the substantive law of the forum state, Kansas." *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1302 (10th Cir. 2011). This action is under the Kansas Wrongful Death Act ("the Act"). The Act requires the court to apportion the recovery after conducting a hearing. Kan. Stat. Ann. § 60-1905. The Act provides that the court, first, should allow costs and reasonable attorney's fees for plaintiffs' counsel. *Id.* The Act then directs the court to apportion the recovery among the heirs in proportion to the loss sustained by each one. *Id.*

The Act allows recovery of damages including: (1) mental anguish, suffering, or bereavement; (2) loss of society, companionship, comfort, or protection; (3) loss of marital care, attention, advice, or counsel; (4) loss of filial care or attention; (5) loss of parental care, training, guidance, or education; and (6) reasonable funeral expenses for the deceased. Kan. Stat. Ann. § 60-1904. The Act allows the court to apportion both pecuniary and non-pecuniary losses. *Turman v. Ameritruck Refrigerated Transport, Inc.*, 125 F.Supp.2d 444, 450–55 (D. Kan. 2000); *see also* Kan. Stat. Ann. § 60-1903. Pecuniary damages in a wrongful death action are those that "can be estimated in and compensated by money." *Turman*, 125 F.Supp.2d at 453. Pecuniary damages "should be equivalent to those pecuniary benefits or compensation that reasonably could have resulted from the continued life of the deceased." *Id.* Pecuniary damages "include losses of such things as marital or parental care, services, training, advice, and financial support." *Id.* Non-pecuniary damages, on the other hand, are generally intangible and may include compensation for "mental anguish, bereavement, loss of society, and loss of companionship." *Id.*

6

at 451. "The Kansas Supreme Court has recognized that 'while these [intangible damages] are nebulous and impossible to equate satisfactorily with money, they nonetheless are very real and onerous to a bereaved [family member], often far outweighing in severity and permanent effect the pecuniary loss involved.'" *Id*.

**III.     Analysis**

    **A.     Attorney's Fees**

Section 60-1905 of the Act "requires the district court to determine a reasonable fee for the plaintiffs' attorneys in a wrongful death case." *Baugh v. Baugh ex rel. Smith*, 973 P.2d 202, 207 (Kan. Ct. App. 1999). "The general rule is that an attorney is entitled to the reasonable value of services performed for the client." *Id.* When deciding whether a requested fee is reasonable, the Court should consider the factors set forth in Kansas Rule of Professional Conduct 1.5(a). *Id.* Those factors are: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. Kan. R. Prof. Conduct 1.5(a).

Counsel and Plaintiffs ask the Court to approve an award of attorney's fees of $175,000.00 from the proceeds of the $675,000.00 recovery in this case, pursuant to the agreement with Plaintiff Dr. Throgmorton. Plaintiffs will receive $500,000.00 out of the recovery against defendants herein. The $50,000.00 balance of the one-third attorneys' fee from

the recovery in this case and the litigation costs will be deducted from the recovery, if any, from the UIM claim remaining to be litigated. Counsel will also be entitled to the contractual one-third contingent fee, plus any litigation costs, from the recovery, if any, on the UIM claim. *See* Affidavits of Bill T. Walker at p.4; Timothy Throgmorton at p.2-3; and Brittany Oschmann at 2-3.

By affidavit, Plaintiffs' counsel described the work conducted to reach the settlement here including: meeting with Dr. Throgmorton in Detroit a multiple times, with Ms. Oshmann in Virginia, and with the decedent's other brother in Southern Illinois; gathering relevant medical records and other documentary evidence; consulting experts; researching federal, Kansas and Illinois law; investigating the facts with specific reference to the claims against Max Papay, LLC and Max and Cecelia Papay, and the wrongful death damages and survival claims; the contested nature of the case against Max Papay, LLC and Max and Cecelia Papay; and negotiating the claims over a period of weeks. *See* Affidavit of Bill T. Walker at p.4-5.

On the first prong of the first factor specified in Rule 1.5(a) -- "the time and labor required" -- neither of the undersigned counsel have billing records of time devoted to this case. The undersigned do contingent fee work and the attorneys do not keep time records unless they sue under a statute permitting a fee award. *See* Affidavit of Bill T. Walker at p.5.

The acceptance of this case did not preclude the undersigned counsel from accepting other matters (second factor). This case did not impose any extraordinary time limitations – other than the rapidity of the litigation in this Court (fifth factor). As to Rule 1.5(a)'s sixth factor, this was the undersigned first professional engagement with either plaintiff. *See* Affidavit of Bill T. Walker at p.5.

Several factors specified in Rule 1.5(a) favor a finding that counsel's fee request is a reasonable one. The claims against Max Papay, LLC and Max and Cecelia Papay pose a challenging aspect of this case (a portion of factor (1)) for Plaintiffs' liability burden. The evidence whether Kenneth Papay was driving in the course of employment or agency at the time of the crash was completely in control of those parties. Plaintiffs' attorneys have devoted much of their practice to wrongful death and personal injury matters, such that we have the "skill requisite to perform the legal service [involved in the representation] properly" (another part of factor (1)). The "amount involved and the results" achieved (fourth factor) favor the requested fee award. Regardless of the difficulty of the case against Max Papay, LLC and Max and Cecelia Papay, counsel secured a consequential settlement. *See* Affidavit of Bill T. Walker at p.5.

The one-third contingency fee is "the fee customarily charged in this locality for similar services" (fourth and eighth factors), and favors counsel's fee request. Courts have approved similar and larger attorney's fees percentages as reasonable in other cases apportioning wrongful death proceeds under Kan. Stat. Ann. § 60-1905. *See, e.g.*, *Newton v. Amhof Trucking, Inc.*, 385 F.Supp.2d 1103, 1108 (D. Kan. 2004) (finding that a 25% contingency fee award was reasonable, and indeed lower, than what often is charged in a personal injury case); *Dudley v. Gagne*, No. 05-2030-JAR, 2006 WL 314347, at *2 (D. Kan. Feb. 3, 2006) (finding that the attorney's one-third contingency fee with plaintiff was reasonable); *Turman*, 125 F.Supp.2d at 48 ("[I]n [the court's] experience . . . a one-third contingency fee is not uncommon in wrongful death actions."). Granting this request "honors an agreement bargained for by competent adults." *Roth v. Builder's Stone & Masonry, Inc.*, No. 19-2747-DDC-GEB, 2020 WL 7633973, at *3 (D. Kan. Dec. 22, 2020) (approving fee request under Section § 60-1905 of the Act).

Plaintiffs' counsel accepted this engagement with the risks inherent in a contingent fee arrangement. It was possible counsel would invest time and capital into the case and receive nothing beyond the $100,000.00 offered by Hartford Insurance on behalf of Kenneth Papay prior to filing.

### B. Apportionment of Settlement

Next, the Court considers how to apportion the remaining wrongful death settlement proceeds. Plaintiffs' counsel proposed the following apportionment:

(1) $175,000.00 of the gross recovery to Plaintiffs' attorneys' fees; and

(2) $500,000.00 to James Throgmorton's sole heir, Ms. Oschmann, to be distributed by Illinois probate court where decedent's estate is pending.

Plaintiffs confirm they retained attorneys Walker and Parrot to pursue their case, and that they understand that their attorneys spent time investigating and preparing the case both before and after they filed suit. Plaintiffs also confirmed that they are satisfied with the work their attorneys performed, and that they fully understand the risks and benefits of settling this case. They confirmed also that they understand that, after attorney's fees are paid in the amount of $175,000.00, the $500,000.00 balance of the settlement will be distributed by the Illinois probate court to the decedent's heir. Each witness testified why they believe that apportionment is fair and reasonable. *See* Affidavits of Timothy Throgmorton at p.4 and Brittany Oschmann at 2-3.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Plaintiffs' Application for Approval of Partial Wrongful Death and Survival Settlement (Doc. 32) is granted. The Court approves counsel's fee request and apportions the wrongful death settlement proceeds in the fashion described by this Memorandum and Order. Plaintiffs are ordered to:

1. Execute receipts for the settlement funds;
2. Execute all releases; and

3. Execute acknowledgements and satisfactions of the same.

**IT IS SO ORDERED.**

Dated: August 23, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
